UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAREN A., <br><br> Plaintiff <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) 2:24-cv-00211-JCN <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION**

On Plaintiff's request for judicial review of Defendant's denial of her application for disability insurance benefits under Title II of the Social Security Act, the Court concluded that the Administrative Law Judge (ALJ) erred in the assessment of Plaintiff's obesity on Plaintiff's residual functional capacity (RFC). (Decision, ECF No. 19.) The Court, therefore, vacated the administrative decision and remanded the matter for further proceedings (the decision).

Citing Federal Rule of Civil Procedure 59, Defendant subsequently asked the Court to reconsider the decision and amend the judgment to affirm Defendant's administrative decision. (Motion to Reconsider, ECF No. 21.) After consideration of the parties' written and oral arguments and following further review of the record and relevant authority, the Court denies the motion.

**DISCUSSION**

"Generally, to prevail on a Rule 59(e) motion, the moving party 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Markel Am.*

*Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (1st Cir. 2012) (quoting *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).  A court can also grant a motion under Rule 59(e) where a movant demonstrates "an error not of reasoning but apprehension." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022) (quotation marks and citations omitted).  Essentially, Rule 59(e) is a means for "a court to correct its own errors and avoid unnecessary appellate procedures."  *Venegas-Hernandez v. Sonolux Recs.*, 370 F.3d 183, 190 (1st Cir. 2004).

Here, Defendant contends that relief is warranted because "[t]he Court's decision . . . conflicts with its prior holdings that, even when an ALJ provides minimal discussion of obesity, remand is not warranted unless the claimant can identify specific obesity-related limitations that the ALJ failed to consider." (Motion to Reconsider at 2.)  Plaintiff argues that the authority upon which Defendant relies is distinguishable.

Preliminarily, the Court notes that in the decision, the Court erroneously cited and referenced SSR 02-1p, which addresses obesity but was replaced by SSR 19-2p in 2019.  Although Plaintiff's date last insured was 2014, Defendant correctly asserts, and Plaintiff agrees, that SSR 19-2p applies.  *See Feliciano Rivera v. Comm'r of Soc. Sec.* Civil No. 20-1374 (MEL), 2022 WL 702416, at *4 n.3 (D.P.R. Mar. 9, 2022) ("because an SSR is intended to provide guidance on adjudication and is binding on the Social Security Administration the day it becomes effective, then the date of the ALJ's decision with relation to the effective date of a new SSR is the key").  As Defendant also notes, "[t]he SSRs are similar . . . in their general guidance that ALJs must explain how they considered obesity." (Motion to Reconsider at 2.)  Consistent with that view, some of the authority

upon which Defendant relies to support the request for relief involved the application of SSR 02-1p.  *See, e.g.*, Motion to Reconsider at 3-4 (citing *Williams v. Colvin*, No. 2:13-cv-125-JAW, 2014 WL 220744 (D. Me. Jan. 21, 2014) for support of Defendant's contention that the effects of Plaintiff's obesity were sufficiently accounted for in the RFC). Nevertheless, the Court's reference to SSR 02-1p and consideration of the reasoning in some decisions issued when SSR 02-1p was in effect are sufficient bases for the Court to assess whether the Court's concerns regarding the ALJ's decision remain valid and warrant remand.

In the decision, the Court concluded that the ALJ's discussion regarding obesity was insufficient and the ALJ's reliance on the consulting expert who commented on obesity (Archibald Green, D.O.) did not "fulfill Defendant's obligation" to account for Plaintiff's obesity. (Decision at 9.) The Court more particularly found that Dr. Green's opinion that obesity "may have contributed" to Plaintiff's symptoms was "equivocal and non-specific." (*Id.*)

> SSR 19-2p provides in relevant part:
>
> We must consider the limiting effects of obesity when assessing a person's RFC . . . As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.
>
> . . .
>
> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment.  People with an MDI of obesity may have limitations in the ability to sustain a function over time.  In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity.

3

SSR 19-2p, 2019 WL 2374244 (May 20, 2019).  SSR 19-2p did not alter Defendant's fundamental obligation to assess the effect of obesity on a claimant's ability to perform the physical activity required to work and to explain how Defendant reached his conclusions.

The jurisprudence developed while SSR 02-1p was in effect, therefore, remains relevant.  Defendant does not appear to dispute this concept.  Rather, Defendant contends the Court misinterpreted and misapplied the relevant case law and reached a conclusion that is at odds with this District's case law.  Defendant maintains that there are

> two common threads running through this district's obesity jurisprudence: (1) ALJs are required to say very little about obesity to show that they considered its effects, and they can generally satisfy this obligation by relying on State-agency experts who considered obesity; and (2) plaintiffs are not entitled to remand when they fail to provide evidence supporting additional obesity-related limitations.

(Defendant's Reply at 3, ECF No. 25.)  Defendant argues that consistent with the relevant case law, the ALJ sufficiently commented on the effects of Plaintiff's obesity and supportably relied on a state-agency expert who considered obesity.  Defendant further contends that remand is not warranted because Plaintiff failed to identify any obesity-related limitations that should have been included in her RFC as the relevant case law requires.

After finding that obesity was a severe impairment, the ALJ's discussion of obesity consisted of the following:

> There are no Listing criteria in Appendix 1 specific to the evaluation of obesity impairments.  However, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing.  For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing. We will not make general

4

> assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record. At her latest medical appointment prior to the date last insured, the claimant was recorded as being 63 inches tall and weighing 158 pounds, which is a BMI of 27.99 kg/m2 (1F/3). As required under SSR 19-2p, I have considered all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

(R. 17.)

> (Commenting on Dr. Green's opinion) While the limitation to frequent climbing ramps and stairs and no climbing ladders, ropes or scaffolds is supported by the record of evidence documenting symptoms of chronic pain, obesity, dizziness, and fatigue, imaging revealing bilateral sacroiliitis warrants greater exertional and postural limitations, as assessed at reconsideration.

(R. 17.)

When asked in the form disability determination report to explain the postural limitations that he found, Dr. Green wrote, "as above and obesity (BMI 30-40)." (R. 80.) Under the section entitled "RFC Additional Explanation," Dr. Green wrote, " N/A obesity may have contributed to symptoms." (R. 81.)

The first issue is whether the Court erred when it concluded that a more meaningful discussion was required to satisfy Defendant's obligation to explain the decision regarding the effect of obesity on Plaintiff's ability to perform physical activity related to work. In essence, Defendant contends that under the teaching of District case law, the ALJ's reliance on Dr. Green's opinion, where he writes "as above and obesity (BMI 30-40)" as the basis for Plaintiff's postural limitations and the ALJ's observation that she considered obesity are sufficient to satisfy Defendant's obligation.

5

The ALJ's general assertion that she "considered all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments" cannot reasonably be considered an explanation of "how [Defendant] reached [his] conclusion on whether obesity causes any limitations" as contemplated by SSR 19-2p. Under the circumstances, therefore, a primary question is whether the ALJ's decision is supportable based on Dr. Green's "as above and obesity (BMI 30-40)" explanation for the postural limitations that Dr. Green included in his assessment.

Defendant maintains that the authority cited by the Court to conclude remand was warranted is distinguishable and that the Court's decision in *Amanda C. v. Saul*, No. 1:19-cv-539-JAW, 2020 WL 5106744 (D. Me. Aug. 31, 2020), *rec. dec. adopted*, 2020 WL 6886257 (D. Me. Nov. 24, 2020) better reflects the District's standard and supports Defendant's argument in this case. In *Amanda C.*, the Court wrote:

> As to Plaintiff's claim that the ALJ did not properly assess Plaintiff's obesity in formulating the RFC, as noted above, the state agency consultants included it as a factor when formulating Plaintiff's RFC findings. (R. 118, 131.) An ALJ may rely on such experts' medical findings in accounting for obesity's impact on Plaintiff's functional abilities. *Rucker v. Colvin*, No. 2:13-cv-00218, 2014 WL 1870731, at *3 (D. Me. May 8, 2014). Furthermore, the ALJ noted that, despite her obesity, Plaintiff can get dressed, cook meals, and complete household chores, as well as shop, attend medical appointments, and go on walks and to the beach. (R. 35.) In addition, the ALJ observed that physical examinations revealed that Plaintiff had full strength and range of motion, a normal gait and effective ambulation. (*Id*.) The ALJ's discussion of the impact of obesity was adequate and was consistent with the conclusions of the agency experts. The ALJ was not required to provide any additional explanation or assessment.

2020 WL 5106744, at * 5. The Court in *Amanda C.* concluded that the ALJ's findings and discussion adequately addressed the impact of obesity, which findings were based at least in part on the state agency expert's opinions.

*Amanda C.* is not inconsistent with the Court's conclusion in this case that the ALJ's discussion on obesity was insufficient and did not satisfy Defendant's obligation to explain the effect of obesity on Plaintiff's RFC. First, the state agency expert in *Amanda C.* made more specific findings regarding the impact of obesity on the plaintiff's functional ability than the expert in this case made. When asked to explain the plaintiff's exertional limitations and the evidence that supports the findings, the expert in *Amanda C.* wrote, "Morbid obesity with BMI 52 and chronic low back pain with DDD on imaging." (Exhibit A to Defendant's Reply at 3, R. 131, ECF No. 25-1.) Similarly, when asked to explain the bases for the plaintiff's postural limitations, the expert wrote, "DDD of spine and morbid obesity preclude ladders, etc., crawling." (*Id*. at 1, 4.) The expert's findings in *Amanda C.* are more explicit (e.g., specific finding that the plaintiff's obesity precluded use of ladders and crawling) than and lack the ambiguity that exists in the state agency expert's opinion in this case.

In addition, even if the Court assumes that the ALJ could reasonably rely on Dr. Green's finding regarding obesity in formulating Plaintiff's RFC, the ALJ must still make sufficient findings and adequately explain how Plaintiff's obesity impacted Plaintiff's functional ability. This Court has observed on multiple occasions, including in this case, that the ALJ is not required to engage in a "protracted" discussion regarding effects of a claimant's obesity on the claimant's functional limitations. An ALJ cannot, however,

7

satisfy the obligation with no individualized discussion particularly where the expert opinion creates some uncertainty regarding the impact of obesity and where the ALJ found Plaintiff's obesity to be a severe impairment, which finding was contrary to the expert's opinion.

In *Amanda C.*, the ALJ's discussion of the plaintiff's obesity consisted of the following:

> The claimant is 67 inches tall, weighs 334 pounds, and has a BMI of 52.31 (Ex. 3F/15). The claimant is obese, however, despite the claimant's obesity; she is able to perform a wide range of daily activities. The evidence shows that the claimant is able to bathe, get dressed, cook meals, and complete household chores. Additionally, the claimant reports going shopping, attending medical appointments, and going to the beach and for walks in town. Physical examiners report that the claimant has full strength and range of motion, her gait is within normal limits, and she ambulates effectively. The claimant has been repeatedly told that she must lose extreme weight in order to proceed with back surgery. Her failure to do so, undercuts her assertion that she experiences chronic, disabling back pain. (Ex. 10F/6; 11F/5, 13, 16; 17F/3).

(*Amanda C.*, No. 1:19-cv-539-JAW, ALJ Decision at 35, ECF No. 9-2.) The ALJ's discussion in *Amanda C.* can fairly be characterized as an individualized assessment. Given the expert's specific findings and given the ALJ's discussion, the Court in *Amanda C.* concluded that Defendant satisfied his obligation.

In this case, the expert's findings are more limited and equivocal or uncertain,[1] and the ALJ's discussion cannot reasonably be viewed as an individualized assessment

---

[1] As noted above, in his explanation for Plaintiff's postural limitations, Dr. Green wrote "as above and obesity (BMI 30-40)." (R. 80.) Under the section entitled "RFC Additional Explanation," Dr. Green wrote, "obesity may have contributed to symptoms." (R. 81.) Without further explanation from Dr. Green regarding his reference to obesity under postural limitations, Dr. Green's narrative description under the "RFC Additional Explanation" section could be viewed to supplement Dr. Green's earlier reference to obesity. The two entries can also be viewed as inconsistent with each other. At a minimum, the two entries

8

comparable to the assessment in *Amanda C.*  In other words, in this case—one where the ALJ found obesity to be a severe impairment, contrary to the finding of the state agency experts—the state agency expert's explanation "as above and obesity (BMI 30-40)" and that obesity "may" contribute to the symptoms, without any substantive discussion by the ALJ, is insufficient to satisfy Defendant's obligation.

The next issue is whether the failure to make sufficient findings constitutes harmless error or requires remand.  Defendant contends that any error is harmless because Plaintiff failed to identify any additional limitations that are necessary to account for Plaintiff's obesity.

As Defendant notes, where an ALJ relies on expert opinions that account for the effect of obesity, "the burden shifts to the claimant to demonstrate additional limitations that he or she claims were omitted." *Mathieu v. Colvin*, No. 1:13-cv-239-JDL, 2014 WL 4055515, at *4 (D. Me. Aug. 15, 2014) (citing *Dixson v. Colvin*, No. 2:13-cv-165-GZS, 2014 WL 1569530, at *4 (D. Me. Apr. 18, 2014)).  For the burden to shift, the ALJ's reliance on the expert's opinion must be reasonable.

As to the reasonableness of the ALJ's reliance on Dr. Green's opinion, in the decision, the Court wrote:

> Perhaps consistent with the non-severe finding, Dr. Green observed that obesity "*may* have contributed" to Plaintiff's symptoms.  (R. 81) (emphasis supplied).  Dr. Green effectively stated that he did not know the impact of obesity on the RFC.  Because Dr. Green's opinion is equivocal and non-specific, the opinion cannot reasonably be construed to "expressly account"

---

generate legitimate questions regarding Dr. Green's opinion and whether the ALJ could reasonably rely on the opinion to satisfy Defendant's obligation to explain the impact of obesity on Plaintiff's functional ability.

9

> for the impact of obesity. *See Pendleton v. Berryhill*, No. 1:13-cv-137-NT, 2017 WL 2895894, at *5 (D. Me. July 7, 2017) (ALJ's finding that obesity "exacerbates" other impairments and "plays a role" in limitations was insufficient.) Under the circumstances, the ALJ's reliance on Dr. Green cannot satisfy the ALJ's obligation to account for the impact of obesity on Plaintiff's functional ability. The ALJ, particularly after concluding that obesity was a more significant impairment than Dr. Green assessed, was required to "explain how [she] reached [her] conclusion[] on whether obesity caused any physical or mental limitations." SSR 02–1p, 2000 WL 628049, at *7.

(Decision at 9-10.) The Court's concerns regarding Dr. Green's opinion and the reasonableness of the ALJ's reliance on the opinion remain.

In the decision, the Court also cited *Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375 (D. Me. Dec. 30, 2010), where the court found that the ALJ did not adequately account for the claimant's obesity when assessing the claimant's limitations, to support its conclusion. In seeking reconsideration, Defendant contends that *Kaylor* and *Pendleton* are factually distinguishable. Regardless of any factual similarities, or dissimilarities, among this case, *Kaylor*, and *Pendleton*, the basic principle remains—an ALJ cannot reasonably rely on an expert who provides an inadequate or uncertain explanation for the impact of obesity on a claimant's functional ability.

Defendant's contention that Dr. Green's finding that obesity "may have contributed" to Plaintiff's limitations is sufficient to sustain the ALJ's finding because SSR 19-2p employs the word "may" when providing guidance as to how Defendant evaluates obesity is unpersuasive. In SSR 19-2p, "may" is used to explain how obesity could potentially impact Defendant's findings (e.g., that alone or with another impairment obesity "may medically equal a listing," or that obesity "may or may not increase the

10

severity or functional limitations of [another] impairment.") 2019 WL 2374244, at * 4. In other words, SSR 19-2p explains the possible ways obesity might impact a person's functional ability. SSR 19-2p does not provide that a finding that obesity "may" impact functional ability would be sufficient to establish a limitation.

Defendant further argues that the Court's decision in *Jason D. v. Soc. Sec. Admin. Comm'r*, No. 2:18-cv-00371-DBH, 2019 WL 1650074 (D. Me. Apr. 17, 2019), where the Court found that the ALJ adequately addressed the impact of the plaintiff's obesity when the ALJ wrote that "obesity may have contributed to the claimant's limitations," demonstrates that Dr. Green's use of the word "may" is sufficient. Defendant's argument is unconvincing. In *Jason D.*, the ALJ wrote in relevant part:

> While obesity may have contributed to the claimant's limitations and potentially aggravated other impairments, those limitations are adequately reflected in the residual functional capacity assessment.

2019 WL 1650074, at *3. In the Court's view, through use of the word "may," the ALJ accepted the fact, at least for the sake or argument, that obesity impacted the plaintiff's functional ability, and then explained that any limitations resulting from the plaintiff's obesity were addressed in the RFC. *Jason D*. does not support the proposition that an ALJ can reasonably rely on an expert opinion that a claimant's obesity "may" result in limitations on the claimant's functional ability.

In sum, under the facts of this case, given the ALJ's limited discussion of the impact of obesity on Plaintiff's functional ability and given the state agency expert's limited and equivocal or uncertain reference to obesity in his findings, Defendant failed to satisfy his

obligation to "consider the limiting effects of obesity" and "explain how [he] reached [his] conclusion on whether obesity causes any limitations." SSR 19-2p.

## CONCLUSION

The Court understands the concerns that prompted Defendant to seek reconsideration. Each social security disability claim is fact dependent. Because there can be small but important differences in the facts of some claims, some claims can be factually similar but with different results.

As explained above, after much deliberation, which has included a further review of the record and an extensive assessment of relevant case law, the Court concludes that the prior case law in this District does not require a different result than is set forth in the decision. The Court finds that a more substantive explanation of the impact of Plaintiff's obesity on her functional ability, by the ALJ or the state agency expert, was required. For SSR 19-2p to have meaning, a general reference to obesity or a reference that creates an ambiguity or uncertainty as to obesity's impact is insufficient.

The Court, therefore, concludes that the decision is not affected by a manifest error of law or a fundamental error in apprehension that would entitle Defendant to relief under Rule 59. Accordingly, the Court denies Defendant's motion for reconsideration.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of October, 2025